UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

<table>
<tr><td>

WEMA HOOVER,

               Plaintiff,

-vs.-

PHILIP A. BESLER, BRIJON MANAGEMENT &
EMPLOYEE LEASING SERVICES, INC., BESLER &
CO., INC., ADMINISTRATIVE COMMITTEE FOR
THE BRIJON MANAGEMENT & EMPLOYEE
LEASING SERVICES, INC. EMPLOYEE STOCK
OWNERSHIP PLAN, CAROLBRI, LLC, MICHAEL
MULLAUGH and BRIJON MANAGEMENT &
EMPLOYEE LEASING SERVICES, INC. EMPLOYEE
STOCK OWNERSHIP PLAN.

               Defendants.

</td><td>

Case No. 3:14-cv-05786-MAS-DEA


**AMENDED CLASS ACTION
COMPLAINT**

</td></tr>
</table>

Plaintiff WEMA HOOVER, in her individual capacity and on behalf of the Class, by way of Amended Complaint against Defendants PHILIP A. BESLER, BRIJON MANAGEMENT & EMPLOYEE LEASING SERVICES, INC., BESLER & CO., INC., ADMINISTRATIVE COMMITTEE FOR THE BRIJON MANAGEMENT & EMPLOYEE LEASING SERVICES, INC. EMPLOYEE STOCK OWNERSHIP PLAN, CAROLBRI, LLC, and MICHAEL MULLAUGH, says:

## INTRODUCTION

1.    Plaintiff WEMA HOOVER was formerly employed by BRIJON MANAGEMENT & EMPLOYEE LEASING SERVICES, INC. ("BRIJON") and BESLER & CO., INC. (d/b/a BESLER Consulting) ("BESLER"), both participating employers in THE BRIJON MANAGEMENT & EMPLOYEE LEASING SERVICES, INC. EMPLOYEE STOCK OWNERSHIP PLAN (the "ESOP" or "Plan"). BESLER, BRIJON and the other participating employers in the ESOP provide financial and operational consulting services to healthcare

organizations. Plaintiff and the Class she seeks to represent were participants in the ESOP and, as alleged below, have been cheated out of their hard-earned retirement benefits as a result of violations of ERISA's fiduciary rules by Defendants.

2.      The ESOP's primary asset was its 100% ownership interest in BRIJON. In July 2011, certain Defendants – including Defendant PHILIP BESLER and Defendant MICHAEL MULLAUGH, the temporary trustee of the ESOP – caused the ESOP to sell its entire ownership interest in BRIJON to Defendant CAROLBRI, LLC, for far less than the fair market value. As a result, Plaintiff and the other ESOP participants received far less than they were entitled to from the ESOP upon termination. Defendant MULLAUGH failed to obtain an independent valuation as required by the Plan and ERISA, or conduct any other meaningful due diligence and instead relied on a stale appraisal with a valuation date of July 31, 2009. The July 31, 2009 appraisal had been prepared for the exclusive use of Defendant PHILIP BESLER, who owned CAROLBRI, LLC, and therefore had an opposing financial interest to the ESOP in the 2011 ESOP Transaction. The July 31, 2009 appraisal also utilized an inappropriate valuation methodology in valuing BRIJON's stock for the 2011 ESOP Transaction. The ESOP suffered substantial damages as a result of Defendants' fiduciary violations.

3.      The BRIJON MANAGEMENT & EMPLOYEE LEASING SERVICES, INC. EMPLOYEE STOCK OWNERSHIP PLAN ("the ESOP") is an employee benefit plan as defined by ERISA § 3(3), 29 U.S.C. § 1002(3), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1). The ESOP was administered in part in Princeton, New Jersey. Defendant BESLER and the other BESLER AFFILIATE COMPANIES were participating employers in the ESOP.

2

## JURISDICTION AND VENUE

4.     This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff to require Defendants to make good to the Plan losses resulting from fiduciary violations, to restore to the Plan or a successor trust any profits that have been made by the breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

5.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29. U.S.C. § 1132(e)(2).

6.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in part in this District, some of the events or omissions giving rise to the claims occurred in this District, and some Defendants may be found in this District.

## PARTIES

7.     At all relevant times, Plaintiff WEMA HOOVER, who was known as Wema Miller at the time she was employed by Defendants BRIJON and BESLER, has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP. Plaintiff HOOVER was employed by BESLER and BRIJON as Director of Human Resources in Princeton, New Jersey, from in or about 2003 through in or about 2005. Plaintiff resides in North Brunswick, New Jersey.

8.     Defendant BRIJON MANAGEMENT & EMPLOYEE LEASING SERVICES, INC. ("BRIJON") is a New Jersey corporation headquartered in Princeton, New Jersey. BRIJON is a Sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). At

all relevant times, BRIJON was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. §

1002(21)(A), because it exercised discretionary authority or discretionary control respecting

management of the ESOP, and/or had discretionary authority or discretionary responsibility in

the administration of the ESOP. Under the terms of the ESOP Plan document, the Board of

Directors of Defendants BRIJON and BESLER were responsible for appointing the Trustee and

Committee of the ESOP, and had the authority to remove the Trustee and/or Committee

members and appoint a new Trustee or Trustees and/or Committee Members in their place. By

virtue of these powers, Defendants BRIJON and BESLER had the fiduciary responsibility to

monitor the Trustee and Committee and remedy any fiduciary violations committed by the

Trustee and/or Committee.

9.      Defendant BESLER & CO., INC. ("BESLER") is a New Jersey corporation

headquartered in Princeton, New Jersey. BESLER is a Sponsor of the ESOP within the meaning

of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). BESLER was a fiduciary of the ESOP under

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or

discretionary control respecting management of the ESOP, and/or had discretionary authority or

discretionary responsibility in the administration of the ESOP. Under the terms of the ESOP Plan

document, the Board of Directors of Defendants BRIJON and BESLER were responsible for

appointing the Trustee and Committee of the ESOP, and had the authority to remove the Trustee

and/or Committee members and appoint a new Trustee or Trustees and/or Committee Members

in their place. By virtue of these powers, Defendants BESLER and BRIJON had the fiduciary

responsibility to monitor the Trustee and Committee and remedy any fiduciary violations

committed by the Trustee and/or Committee.

10.      At all relevant times, Defendant PHILIP A. BESLER ("PHILIP BESLER") was

the President, Chairman and/or Director of Defendant BRIJON, BESLER, and other participating employers in the ESOP (collectively "BESLER AFFILIATE COMPANIES"). Upon information and belief, Defendant PHILIP BESLER, his family, and/or trusts or other entities they controlled were the sole owners of the BESLER AFFILIATE COMPANIES (other than BRIJON) at all relevant times. At all relevant times, Defendant PHILIP BESLER was also the Trustee and sole member of the ADMINISTRATIVE COMMITTEE of the ESOP. Thus, at all relevant times, Defendant PHILIP BESLER was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. As Trustee, Defendant PHILIP BESLER's specified powers included the powers to contest claims on behalf of the ESOP and to begin or maintain any litigation necessary in connection with the investment or administration of the Trust, as directed by the ADMINISTRATIVE COMMITTEE. Defendant PHILIP BESLER at all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14). Upon information and belief, Defendant PHILIP BESLER resides in Beach Haven, New Jersey, and Boynton Beach, Florida.

11.    At certain relevant times, Defendant ADMINISTRATIVE COMMITTEE FOR THE BRIJON MANAGEMENT & EMPLOYEE LEASING SERVICES, INC. EMPLOYEE STOCK OWNERSHIP PLAN ("ADMINISTRATIVE COMMITTEE") has been the named fiduciary of the ESOP and the "administrator" of the ESOP within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). Defendant ADMINISTRATIVE COMMITTEE at all relevant times was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C.

§ 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. As the named fiduciary, the ADMINISTRATIVE COMMITTEE's specified powers included the powers to direct the Trustee to contest claims on behalf of the ESOP and to begin or maintain any litigation necessary in connection with the investment or administration of the Trust. The ADMINISTRATIVE COMMITTEE also had the duty to monitor the performance of the Trustee. Defendant ADMINISTRATIVE COMMITTEE at all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14). Defendant ADMINISTRATIVE COMMITTEE is an unincorporated organization or association located in Princeton, New Jersey.

12.   At all relevant times, Defendant CAROLBRI, LLC ("CAROLBRI") was a New Jersey corporation headquartered in Princeton, New Jersey. Defendant PHILIP BESLER is the sole owner and CEO of CAROLBRI. Defendant PHILIP BESLER created CAROLBRI in January 2011 for the sole purpose of purchasing the ESOP's BRIJON stock. At all relevant times, CAROLBRI was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), and a disqualified person under IRC § 4975.

13.   At some relevant times, Defendant MICHAEL MULLAUGH ("MULLAUGH") was the "temporary independent trustee" of the BRIJON ESOP. Thus, at some relevant times, Defendant MULLAUGH was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary

6

responsibility in the administration of the ESOP. As temporary independent trustee, MULLAUGH was responsible for conducting due diligence and negotiating the terms of the 2011 ESOP Transaction on behalf of the ESOP. Defendant MULLAUGH also acted as temporary independent trustee in approving certain transactions between PHILIP BESLER and BRIJON AFFILIATE COMPANIES on behalf of the ESOP in 2004. Defendant MULLAUGH at all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14). At all relevant times, Defendant MULLAUGH was also a member of the Boca Raton City Council. Upon information and belief, Defendant MULLAUGH resides in Boca Raton, Florida.

## **FACTUAL ALLEGATIONS**

14.    BRIJON and the other BESLER AFFILIATE COMPANIES adopted the ESOP effective in August 2002.

15.    Upon information and belief, in or about 2002, BRIJON appointed Defendant PHILIP BESLER as a member of the ADMINISTRATIVE COMMITTEE and as Trustee of the ESOP.

16.    The ESOP purchased 100% of BRIJON's stock from Defendant PHILIP BESLER in August 2002 (the "2002 ESOP Transaction").

17.    Defendant PHILIP BESLER acted on behalf of the ESOP in the 2002 ESOP Transaction in which Defendant PHILIP BESLER sold his BRIJON's stock to the ESOP. Indeed, as Trustee, Defendant PHILIP BESLER was responsible for negotiating the terms of the 2002 ESOP Transaction on behalf of the ESOP. Thus, Defendant PHILIP BESLER was both the buyer and the seller in the 2002 ESOP Transaction.

18.    The ESOP purchased Defendant PHILIP BESLER's stock in exchange for a ten-year promissory note from the ESOP. Upon information and belief, the promissory note provided

7

for recourse against the ESOP upon an event of default. Further, upon an event of default, the promissory notes provided for the Plan's payment of plan assets to Defendant PHILIP BESLER in an amount greater than the amount of the actual default.

19.     Employees of the BESLER AFFILIATE COMPANIES became employees of BRIJON, and BRIJON entered into management services and employee leasing agreements with the BESLER AFFILIATE COMPANIES. These employees (now joint employees of BRIJON and their respective BESLER AFFILIATE COMPANIES) continued to perform their same job duties for the BESLER AFFILIATE COMPANIES, but now they did so pursuant to these agreements by which the BESLER AFFILIATE COMPANIES paid for all of BRIJON's expenses (salaries, overhead, etc.) and provided BRIJON with a percentage of BESLER'S overall revenue.

20.     Under the terms of the Business Management Services Agreement dated as of August 10, 2002, BESLER was required to pay BRIJON 90% of BESLER'S gross revenue adjusted for payments made to BRIJON for its employee leasing services during the first four months of a contract year, and 50% of BESLER'S gross revenue adjusted for payments made to BRIJON for its employee leasing services during the balance of a contract year.

21.     Under the terms of the Employee Leasing Services Agreement dated as of August 10, 2002, BESLER was required to pay all of BRIJON's expenses for employee leasing services (including all salaries and benefits), and all other costs, fees, expenses and disbursements incurred by BRIJON in connection with its services to BESLER, plus 10% of such expenses up to $30,000 per year.

22.     BESLER could terminate the Business Management Services Agreement upon 180 days' written notice to BRIJON. BESLER could terminate the Employee Leasing Services

8

Agreement upon 60 days' written notice to BRIJON. Upon information and belief, BESLER gave notice to terminate the Business Management Services Agreement on November 1, 2002, but reinstated the Agreement in 2003.

23.    PHILIP BESLER acted for both BESLER and BRIJON in "negotiating" the Employee Leasing Services Agreement and the Business Management Services Agreement. PHILIP BESLER was the only signatory for BESLER and BRIJON on these agreements.

24.    Effective August 1, 2003, BRIJON entered into a separate Business Management Services Agreement with Innovative Health Solutions LLC ("Innovative"), which was a BESLER AFFILIATE COMPANY. BRIJON's Business Management Services Agreement with Innovative required Innovative to pay BRIJON a management fee of 10% of BRIJON's management expenses (after certain adjustments) in addition to all of BRIJON's management expenses. In consideration, BRIJON agreed to loan PHILIP BESLER up to $4 million. The Agreement states that these terms were arrived at after "arms length negotiations [sic]," but the terms were actually decided by PHILIP BESLER and his advisors. The Agreement also provided for PHILIP BESLER to pay interest, but failed to specify the interest rate.

25.    Effective August 1, 2003, BRIJON entered into a separate Employee Leasing Services Agreement with Innovative Health Solutions LLC ("Innovative"), which was a BESLER AFFILIATE COMPANY. BRIJON's Employee Leasing Services Agreement with Innovative required Innovative to pay BRIJON a fee of all of BRIJON's expenses for employee leasing services (including all salaries and benefits), and all other costs, fees, expenses and disbursements incurred by BRIJON in connection with its services to BESLER, plus 10% of such expenses up to $30,000 per year. The Agreement states that these terms were arrived at after "arms length negotiations [sic]," but the terms were actually decided by PHILIP BESLER

9

and his advisors.

26.     In agreeing to have BRIJON loan himself up to $4 million, PHILIP BESLER acted without the knowledge or consent of Plaintiff or the other Plan participants who were shareholders in BRIJON. PHILIP BESLER concealed the loan agreement and other employment agreements from Plaintiff and the other Plan participants who were shareholders in BRIJON. Plaintiff did not know that BRIJON agreed to loan money to PHILIP BESLER until discovery in this action.

27.     As with the BESLER agreements, BRIJON's agreements with Innovative provided that Innovative could terminate the Business Management Services Agreement upon 180 days' written notice to BRIJON and could terminate the Employee Leasing Services Agreement upon 60 days' written notice to BRIJON.

28.     As part of the 2002 ESOP Transaction, BRIJON entered into an agreement with Defendant PHILIP BESLER by which BRIJON would pay premiums of $2 million per year over a five-year period (for a total payment of $10 million) for a life insurance policy or policies taken out in the name of Defendant PHILIP BESLER. Defendant PHILIP BESLER was then obligated to repay the premiums to BRIJON or to grant an irrevocable assignment of policy funds to BRIJON sufficient to repay the premiums. Upon information and belief, no repayment or assignment has occurred.

29.     As part of the 2002 ESOP Transaction, Defendant PHILIP BESLER entered into an employment agreement with BRIJON by which he became an officer of BRIJON, received a large annual salary, and substantial deferred compensation. PHILIP BESLER acted on behalf of BRIJON in his employment and deferred compensation agreements. BRIJON had no independent representation.

30.     In or about 2003, Defendant PHILIP BESLER amended his deferred compensation agreement with BRIJON to substantially increase his deferred compensation. PHILIP BESLER acted on behalf of BRIJON in amending his deferred compensation agreement. BRIJON had no independent representation.

31.     In amending his deferred compensation agreement, PHILIP BESLER acted without the knowledge or consent of Plaintiff or the other Plan participants who were shareholders in BRIJON. PHILIP BESLER concealed his deferred compensation agreement and other employment agreements from Plaintiff and the other Plan participants who were shareholders in BRIJON. Plaintiff did not know that BRIJON agreed to pay deferred compensation or increase the deferred compensation paid to PHILIP BESLER until discovery in this action.

32.     In or about 2008, Defendant PHILIP BESLER amended his deferred compensation agreement with BRIJON to substantially decrease his deferred compensation.

33.     The August 2002 ESOP Transaction resulted in the ESOP owning all of the stock of BRIJON. In turn, upon information and belief, the value of BRIJON was almost entirely comprised of the following three items: (1) payments due from Defendant PHILIP BESLER to repay the insurance premiums paid on his behalf; and (2) payments due from the BESLER AFFILIATE COMPANIES. BRIJON's only material liability was to provide deferred compensation to Defendant PHILIP BESLER.

34.     BESLER AFFILIATE COMPANIES have not made all payments due to BRIJON under BRIJON's management services agreement with the BESLER AFFILIATE COMPANIES. Defendant PHILIP BESLER, who is an officer and director of both BRIJON and the BESLER AFFILIATE COMPANIES, is aware that the BESLER AFFILIATE COMPANIES

have not made all payments due to BRIJON under BRIJON's management services agreement. Indeed, Defendant PHILIP BESLER was responsible for the BESLER AFFILIATE COMPANIES failure to make all payments due to BRIJON under BRIJON's management services agreement. PHILIP BESLER acted in his own self-interest by not having the BESLER AFFILIATE COMPANIES make all payments due to BRIJON. Defendants, in their capacities as the fiduciaries and/or trustee of the ESOP, have not taken any action to enforce the ESOP's rights as sole shareholder of BRIJON.

35.    In failing to have the BESLER AFFILIATE COMPANIES make all payments due to BRIJON, PHILIP BESLER acted without the knowledge or consent of Plaintiff or the other Plan participants who were shareholders in BRIJON. PHILIP BESLER concealed the BESLER AFFILIATE COMPANIES' failure to make payments due to BRIJON from Plaintiff and the other Plan participants who were shareholders in BRIJON. Plaintiff was not aware of the BESLER AFFILIATE COMPANIES' failure to make payments due to BRIJON until discovery in this action.

36.    In 2008, Defendants PHILIP BESLER and BESLER agreed to pay the United States $2.875 million plus interest to settle allegations of fraud against the federal Medicare program. Defendants PHILIP BESLER and BESLER had been named as defendants in qui tam actions filed in this District. The U.S. Justice Department alleged that Defendants PHILIP BESLER and BESLER counseled hospital clients to improperly increase charges to Medicare patients in order to obtain enhanced reimbursement from Medicare. Upon information and belief, the Medicare fraud settlement was part of Defendant PHILIP BESLER's motivation to terminate the ESOP at minimal cost to himself and BESLER.

37.    In or about 2009, Defendant PHILIP BESLER (in his capacity as Trustee and sole

12

member of the ADMINISTRATIVE COMMITTEE) and Defendant ADMINISTRATIVE

COMMITTEE decided to dispose of the ESOP's BRIJON stock. On or about June 30, 2009,

Defendant PHILIP BESLER, in his capacities as President of BRIJON/BESLER and member of

the ADMINISTRATIVE COMMITTEE of the ESOP, sent a notice to certain participants in the

ESOP that the ESOP would be discontinued and terminated effective July 31, 2009. In the

notice, PHILIP BESLER told participants that the value of the ESOP had been affected by the

economic downturn. This statement was not true because the value of the ESOP was largely

based on the value of the premium loan between PHILIP BESLER and BRIJON, which was not

affected by the recession. Defendant PHILIP BESLER also stated that BRIJON was terminating

the ESOP in order "to stave off further erosion" of the ESOP's value. This statement was not

true because PHILIP BESLER had decided to terminate the ESOP for other reasons, including,

*inter alia*, his recent Medicare fraud settlement.

    38.    The law firm Greenberg Traurig, LLP ("GT") had advised Richard Shaw and

Shaw Financial Services, Inc. (collectively, "Shaw"), who were the financial advisors for

Defendants PHILIP BESLER, BESLER and BRIJON, regarding the tax strategy and form

documents for the ESOP program marketed by Shaw and utilized by BESLER and PHILIP

BESLER.

    39.    Upon information and belief, GT recommended to Shaw that Defendants

BESLER, PHILIP BESLER and/or BRIJON hire Defendant MULLAUGH as the "Temporary

Independent Trustee" for the ESOP for purposes of the 2011 ESOP Transaction.

    40.    On or about August 11, 2010, the ESOP and MULLAUGH entered into a written

agreement whereby the ESOP retained Defendant MULLAUGH as "Temporary Independent

Trustee" of the ESOP to determine the fair value of BRIJON stock and represent the ESOP in

negotiating with PHILIP BESLER regarding the sale of the BRIJON stock owned by the ESOP. The ESOP did not have the authority to hire a Temporary Independent Trustee.

41.     BESLER, PHILIP BESLER and/or BRIJON had hired MULLAUGH as the "Temporary Independent Trustee" on a prior occasion in or about 2004. At that time, MULLAUGH approved a series of transactions, including a proposed loan by BRIJON of up to $4 million to PHILIP BESLER. MULLAUGH approved these transactions as being "fair" to the ESOP based upon an opinion provided by BESLER's accountants and financial advisor, and did not obtain any independent opinions or analysis.

42.     Upon information and belief, GT has recommended MULLAUGH as an independent trustee for ESOPs on multiple occasions.

43.     MULLAUGH was appointed to the City Council of the City of Boca Raton in 2008. MULLAUGH has retained GT as counsel for the City of Boca Raton in his capacity a member of the City Council. For example, at the April 28, 2009 City Council meeting, MULLAUGH made the motion authorizing the Mayor and City Clerk to hire GT as Bond Counsel for the City of Boca Raton. The motion was carried unanimously.

44.     Due to his relationship with GT, Defendant MULLAUGH had conflicts of interest and potential conflicts of interest, which prevented him from being an independent trustee who could act with undivided loyalty on behalf of the ESOP in the 2011 ESOP Transaction.

45.     Defendants concealed MULLAUGH's role as independent trustee of the ESOP from Plaintiff and other Plan participants.  Plaintiff did not learn of MULLAUGH's role as independent trustee of the ESOP until discovery in this action.

46.     Although GT did not represent any of the parties to the 2011 ESOP Transaction for purposes of the Transaction, GT nevertheless prepared the form agreements used for the 2011

14

ESOP Transaction.

47.    On or about April 19, 2011, Defendant MULLAUGH agreed to sell the ESOP's

BRIJON stock to Defendant CAROLBRI for $468,000 ("2011 ESOP Transaction"). The 2011

ESOP Transaction, however, was not finalized until July 20, 2011. On July 20, 2011,

MULLAUGH caused the ESOP sell its BRIJON stock to CAROLBRI for $468,000.

48.    Defendant MULLAUGH did not conduct adequate due diligence for the 2011

ESOP Transaction. MULLAUGH did not have a financial advisor or legal advisor for the 2011

ESOP Transaction. Upon information and belief, Defendant MULLAUGH did not interview any

officers or employees of BRIJON or BESLER to obtain information about BRIJON's assets,

liabilities, business operations or financial projections. Upon information and belief,

MULLAUGH did not even review the relevant Plan documents. Defendant MULLAUGH did

not visit the offices of BRIJON or the BESLER AFFILIATE COMPANIES. MULLAUGH

relied upon financial information supplied to him by Shaw, who was a financial advisor to

Defendants PHILIP BESLER, BESLER and BRIJON. Upon information and belief,

MULLAUGH did not review the key agreements for determining BRIJON's value, including

BRIJON's management services and employee leasing agreements with BESLER, the premium

loan agreement between BRIJON and PHILIP BESLER, and PHILIP BESLER's deferred

compensation agreement. A substantial portion of MULLAUGH's fairness opinion is copied

from a letter drafted by PHILIP BESLER and provided to MULLAUGH by Shaw.

49.    Defendant MULLAUGH relied upon an appraisal of BRIJON as of July 31, 2009

prepared by International Valuation Associates, Inc. ("IVA") in valuing the ESOP's BRIJON

stock for purposes for the 2011 ESOP Transaction. The IVA appraisal as of July 31, 2009 was

stale by the time of the July 2011 ESOP Transaction. Indeed, the ESOP's Plan document

required that "[i]n the case of a transaction between the Plan and a Disqualified Person, value must be determined as of the date of the applicable transaction." Defendant CAROLBRI was a disqualified person under the IRC.

50.     The IVA appraisal was not reliable and MULLAUGH should not have relied upon it. The appraisal report states that it "was prepared for the exclusive use of Philip Besler and his financial and legal advisors." Thus, the IVA appraisal report was prepared for PHILIP BESLER, who, as the owner of CAROLBRI, had a financial interest adverse to the ESOP in the 2011 ESOP Transaction. The IVA appraisal report was not an independent valuation of the ESOP for purposes of the 2011 ESOP Transaction. Moreover, the IVA appraisal as of July 31, 2009 was prepared for purposes of the ESOP's annual Form 5500 report and was not prepared for a potential stock transaction; therefore, the report does not discuss important issues such as a control premium. Most importantly, the IVA appraisal as of July 31, 2009 uses a flawed valuation methodology. The IVA appraisal did not properly account for the value of BRIJON's assets, i.e., the premium loan repayment obligations of Defendant PHILIP BESLER, or BRIJON's liabilities under the deferred compensation agreement with PHILIP BESLER. The IVA appraisal also did not properly account for the value of BRIJON's claims for additional management services fees or BRIJON's other claims and assets. The IVA appraisal also uses the amount of deferred compensation set forth in PHILIP BESLER's 2003 agreement with BRIJON, rather than the much lower deferred compensation set forth in PHILIP BESLER's 2008 agreement with BRIJON.

51.     Plaintiff and other ESOP participants were entitled to direct the voting of BRIJON shares allocated to their ESOP account with regard to the proposed 2011 ESOP Transaction under the terms of the Plan and as required by IRC 409(e). Defendants MULLAUGH, PHILIP

BESLER, ADMINISTRATIVE COMMITTEE and BRIJON did not permit Plaintiff and other
ESOP participants to direct voting of their BRIJON shares with regard to the proposed 2011
ESOP Transaction.

52.     Defendant MULLAUGH caused the ESOP to sell its BRIJON stock to
CAROLBRI for far less than Fair Market Value.

53.     BRIJON terminated the ESOP effective in or about 2012. Plaintiff and other Plan
participants received only a small distribution from the ESOP because Defendants improperly
valued the ESOP's stock. Therefore, as alleged above, Plaintiff and other Plan participants
received less than the Fair Market Value of the BRIJON stock in their individual ESOP accounts
because, upon information and belief, the ESOP disposed of its BRIJON stock for less than Fair
Market Value in the 2011 ESOP Transaction.

54.     Defendants did not disclose any of the acts or omissions alleged above to Plaintiff
or other rank-and-file Plan participants, but instead engaged in further acts to conceal their
violations of ERISA's fiduciary rules. *Inter alia*, Defendants sent summary annual reports and
annual benefit statements to Plaintiff and other Plan participants purporting to set forth the actual
value of the ESOP's BRIJON stock. However, as alleged above, the values set forth in the
summary annual reports and annual benefit statements was much lower than the actual value of
the ESOP's BRIJON stock.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings the First and Second Claims for Relief for violations of ERISA
§§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), as a class action pursuant to
Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons who were participants in the ESOP when
BRIJON terminated the ESOP effective in or about 2012 and/or beneficiaries of such ESOP

participants (hereinafter "Plaintiff Class"). Excluded from the Plaintiff Class are Defendants PHILIP BESLER, MICHAEL MULLAUGH and their immediate family; the officers and directors of Defendant BRIJON and the BESLER AFFLIATE COMPANIES; and legal representatives, successors, heirs, and assigns of any such excluded persons.

56.    The Plaintiff Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that over 100 employees and former employees of the BESLER AFFILIATE COMPANIES were participants, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP at the time the Plan was terminated. Although the exact number and identities of Class Members are unknown to Plaintiff at this time, this information is easily ascertainable from the ESOP through discovery of its records.

57.    Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

      i.    Whether Defendants engaged in a prohibited transaction under ERISA by permitting the ESOP to sells its BRIJON stock to CAROLBRI in the 2011 ESOP Transaction for less than adequate consideration;

     ii.    Whether Defendant MULLAUGH engaged in a prudent investigation of the 2011 ESOP Transaction;

   iii.    Whether Defendants breached a fiduciary duty to ESOP participants by causing the ESOP to dispose of its BRIJON stock in or about 2011 for less than Fair Market Value and violating the terms of the Plan;

    iv.    The amount of damages suffered by the ESOP as a result of Defendants' fiduciary violations.

58.    Plaintiff's claims are typical of those of the Plaintiff Class. For example, Plaintiff,

18

like other ESOP participants in the Plaintiff Class, suffered a diminution in the value of her

ESOP account when the ESOP disposed of its BRIJON stock for less than Fair Market Value,

and she continues to suffer such losses in the present because Defendants have failed to correct

their decision to have the ESOP dispose of its BRIJON stock without receiving any consideration

in return.

59.     Plaintiff will fairly and adequately represent and protect the interests of the

Plaintiff Class. Plaintiff has retained counsel competent and experienced in complex class

actions, ERISA, and employee benefits litigation.

60.     Class certification of Plaintiff's First and Second Claims for Relief for violations

of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate

actions by individual Class members would create a risk of inconsistent or varying adjudications

which would establish incompatible standards of conduct for Defendants, and/or because

adjudications with respect to individual Class members would as a practical matter be dispositive

of the interests of non-party Class members.

61.     In addition, Class certification of Plaintiff's First and Second Claims for Relief

for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants

have acted or refused to act on grounds generally applicable to the Class, making appropriate

declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The members

of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary

violations.

62.     The names and addresses of the Plaintiff Class are available from the ESOP.

Notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

## COUNT I

**[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),
29 U.S.C. §§ 1132(a)(2) and (a)(3) by Defendants Philip Besler, Mullaugh, Besler, Brijon,
and Administrative Committee]**

63.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

64.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan

fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants

and beneficiaries, in accordance with the documents and instruments governing the plan insofar

as such documents and instruments are consistent with ERISA, and with the care, skill, prudence,

and diligence under the circumstances then prevailing that a prudent person acting in a like

capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims. The fiduciary duty of loyalty entails a duty to avoid conflicts of

interest and to resolve them promptly when they occur.  A fiduciary must always administer a

plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the

interests of the fiduciaries themselves or the plan sponsor.

65.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a

fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the

plan any losses to the plan resulting from each such breach, and additionally is subject to such

other equitable or remedial relief as the court may deem appropriate, including removal of the

fiduciary.

66.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an

action for relief under ERISA § 409.

67.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an

action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to

enforce the terms of a plan.

68.     Defendant MULLAUGH breached his duties under ERISA § 404(a)(1), 29 U.S.C.
§ 1104(a)(1). These breaches include but are not limited to the following:

A.      Defendant failed to obtain an independent appraisal valuing the ESOP's
Brijon stock for purposes of the proposed 2011 ESOP Transaction;

B.      Defendant relied on a stale and unreliable valuation prepared for the
exclusive use of PHILIP BESLER – the owner of CAROLBRI whose
financial interests were adverse to the ESOP;

C.      Defendant failed to conduct an adequate due diligence investigation of the
proposed sale of the ESOP's stock to CAROLBRI in the 2011 ESOP
Transaction;

D.      Defendant failed to prudently determine that his reliance on the IVA
valuation of Brijon stock as of 7/31/09 was reasonable before entering into
the 2011 ESOP Transaction;

E.      Defendant acted under a conflict of interest due to his relationship with
GT and his conflict of interest tainted the 2011 Transaction;

F.      Defendant was not properly appointed as temporary independent trustee of
the ESOP and therefore was not authorized to act on the ESOP's behalf in
the 2011 ESOP Transaction.

G.      Defendant relied on a valuation report that utilized an improper valuation
methodology for the 2011 ESOP Transaction;

H.      Defendant did not review the agreements between BRIJON and PHILIP
BESLER or between BRIJON and BESLER;

I.     Prior to the proposed 2011 ESOP Transaction, Defendant did not adequately review and understand the IVA valuation report; identify and question the valuation report's underlying assumptions; make reasonable inquiry as to whether the information in the report was materially consistent with information in Defendant's possession; analyze whether the valuation report's conclusions were consistent with the data and analyses; and analyze whether the valuation report was internally consistent in material respects;

J.     Defendant caused the ESOP to sell its BRIJON stock to CAROLBRI for less than Fair Market Value in or about 2011;

K.     Defendant failed to conduct a thorough and independent review and adequately consider whether the ESOP's 2011 disposal of BRIJON stock was in the best interests of the Plan participants;

L.     Defendant failed to undertake an adequate and independent valuation of the BRIJON stock prior to the 2011 ESOP Transaction;

M.     Defendant failed to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the 2011 ESOP Transaction;

N.     Defendant failed to adequately consider all material facts in negotiating the 2011 ESOP Transaction;

O.     Defendant caused the ESOP to enter into the 2011 ESOP Transaction even though it violated the terms of the Plan;

P.     Defendant failed to permit ESOP participants to vote their allocated shares

with regard to the proposed 2011 ESOP Transaction;

Q.      Defendant failed to remedy the ESOP's disposal of BRIJON stock for less than Fair Market Value at any time between 2011 and the present;

69.      Defendants include PHILIP BESLER, ADMINISTRATIVE COMMITTEE, BESLER, and BRIJON breached their duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). These breaches but are not limited to the following:

R.      Defendants failed to take reasonable steps to determine that the appraisers received complete, accurate and current information necessary to value BRIJON's stock;

S.      Defendants engaged in additional acts to conceal their fiduciary violations, including sending misleading annual benefit statements and summary annual reports to Plaintiff and other ESOP participants;

T.      Defendants allowed the ESOP to enter into the 2011 ESOP Transaction even though it violated the terms of the Plan;

U.      Defendants failed to properly appoint an independent trustee for the ESOP for purposes of the 2011 ESOP Transaction;

V.      Defendants did not permit ESOP participants to vote their allocated shares with regard to the proposed 2011 ESOP Transaction;

W.      Defendants with the power to appoint and duty to monitor the Trustee and/or the ADMINISTRATIVE COMMITTEE failed to properly monitor the acts and omissions of the Trustee and/or the ADMINISTRATIVE COMMITTEE; and

X.      Defendants failed to pursue the ESOP's claims as the sole shareholder of

BRIJON arising out of, *inter alia*, the BRIJON AFFILIATE

COMPANIES' failure to pay all management services fees due to

BRIJON and Defendant Philip Besler's failure to repay insurance

premium loans and/or other loans from BRIJON.

70.   Defendant PHILIP BESLER has engaged in self-dealing and breached his

fiduciary obligations to Plaintiff and the other Plan participants who are shareholders of

BRIJON.

71.   Defendants have engaged in fraud or concealment to prevent Plaintiff and other

Plan participants from learning of Defendants' fiduciary violations.

72.   ERISA § 410 prohibits agreements that purport to relieve a fiduciary from

responsibility or liability for any fiduciary duty. 29 U.S.C. § 1110(a). Specifically, § 410 states

that "any provision in an agreement or instrument which purports to relieve a fiduciary from

responsibility or liability for any responsibility, obligation, or duty under this part shall be void

as against public policy." 29 U.S.C. § 1110(a).

73.   Any indemnification agreement between Defendants, on the one hand, and the

ESOP, on the other hand, violates ERISA § 410 and is therefore null and void.

74.   Defendants' acts and omissions caused millions of dollars of losses to the ESOP

in an amount to be proven more specifically at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants PHILIP A. BESLER,

MICHAEL MULLAUGH, BESLER & COMPANY, INC., BRIJON MANAGEMENT &

EMPLOYEE LEASING SERVICES, INC., and ADMINISTRATIVE COMMITTEE FOR THE

BRIJON MANAGEMENT & EMPLOYEE LEASING SERVICES, INC. EMPLOYEE STOCK

OWNERSHIP PLAN, jointly and severally, on this Count for damages, declaratory and

injunctive relief, equitable relief, attorneys' fees and costs.

## COUNT II

**[Engaging in Prohibited Transactions Forbidden by ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b) against Defendants Philip Besler, Mullaugh, Besler, Brijon, Carolbri, and Administrative Committee]**

75.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

76.     ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

77.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

78.     ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the Fair Market Value of the asset, and the fiduciary must conduct a prudent investigation to determine the Fair Market Value of the asset.

79.     Defendants PHILIP BESLER, MICHAEL MULLAUGH, CAROLBRI,

ADMINISTRATIVE COMMITTEE, BESLER, and BRIJON caused the ESOP to engage in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the 2011 ESOP Transaction, and the prohibited transaction did not meet the conditional exemption requirements of ERISA § 408(e), 29 U.S.C. § 1108(e). Defendants failed to ensure that the ESOP received fair market value for the ESOP's BRIJON stock in the 2011 ESOP Transaction. Specifically, the ESOP received less than Fair Market Value for its BRIJON stock.

80.     Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the ESOP to sell its BRIJON stock to CAROLBRI for less than adequate consideration in or about 2011. Defendants failed to conduct an independent and prudent investigation into the fair market price before causing the ESOP to enter into the stock purchase agreement with CAROLBRI. Defendants failed to, among other things, ensure that they secured a reliable and independent expert appraisal of the Fair Market Value of BRIJON stock prior to the 2011 ESOP Transaction; and make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the Transaction.

81.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary or an order barring the fiduciary from serving as a fiduciary of an ERISA plan in the future.

82.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

83.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

84.     Defendants have caused millions of dollars of losses to the ESOP by the prohibited transactions in an amount to be proven more specifically at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants PHILIP A. BESLER, MICHAEL MULLAUGH, CAROLBRI, BRIJON MANAGEMENT & EMPLOYEE LEASING SERVICES, INC., BESLER & CO. INC., and ADMINISTRATIVE COMMITTEE FOR THE BRIJON MANAGEMENT & EMPLOYEE LEASING SERVICES, INC. EMPLOYEE STOCK OWNERSHIP PLAN, jointly and severally, on this Count for damages, declaratory and injunctive relief, equitable relief, attorneys' fees and costs.

## PRAYER

Wherefore, Plaintiff prays for judgment against the Defendants and each of them on each Claim for Relief and for the following relief:

**As to Count I:**

A. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and her counsel as class counsel;

B. Declare that Defendants and each of them have breached their fiduciary duties to the Plaintiff Class and/or knowingly participated in breaches of fiduciary duty;

C. Enjoin Defendants and each of them from further violations of its fiduciary responsibilities, obligations and duties;

D. Issue a preliminary and permanent injunction removing Defendants as fiduciaries and Trustee of the ESOP and/or barring Defendants from serving as fiduciaries or Trustees of

the ESOP or other ERISA plans in the future, and appointing a new independent fiduciary as Trustee of the ESOP or a successor trust;

E. Order that Defendants make good to the ESOP and/or to any successor trust(s) the losses resulting from their breaches and restoring any profits they have made through use of assets of the ESOP;

F. Order the re-establishment of the ESOP or establishment of a successor trust for benefits owing to participants and beneficiaries whose Plan accounts have been distributed;

G. Order that Defendants provide other appropriate equitable relief to the ESOP or successor trust, including but not limited to, surcharge, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

H. Declare that any indemnification agreement between the Defendants and the ESOP violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void.

I. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

J. Order Defendants to pay prejudgment interest; and

K. Award such other and further relief as the Court deems equitable and just.

**As to Count II:**

A. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and her counsel as class counsel;

B. Declare that Defendants and each of them have breached their fiduciary responsibilities and/or duties as a party in interest to the Plaintiff Class;

C. Enjoin Defendants and each of them from further prohibited transactions and violations

of their fiduciary responsibilities, obligations and duties;

D.  Issue a preliminary and permanent injunction removing Defendants as fiduciaries and Trustee of the ESOP and/or barring Defendants from serving as fiduciaries or Trustee of the ESOP or other ERISA plans in the future, and appointing a new independent fiduciary as Trustee of the ESOP or a successor trust;

E.  Declare that Defendants and each of them engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the ESOP to dispose of its BRIJON stock for less than adequate consideration;

F.  Order that Defendants and each of them make good to the ESOP and/or to any successor trust(s) the losses resulting from their breaches and restoring any profits they have made through use of assets of the ESOP;

G.  Order the re-establishment of the ESOP or establishment of a successor trust for benefits owing to participants and beneficiaries whose Plan accounts have been distributed;

H.  Order that Defendants provide other appropriate equitable relief to the ESOP or successor trust, including but not limited to, surcharge, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

I.  Order Defendants to pay prejudgment interest;

J.  Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund; and

K.  Award such other and further relief as the Court deems equitable and just.

Dated:     October 14, 2015          Respectfully submitted,

PRIBISH-REISS LLP

By:  _____

John J. Pribish (JP6351)
116 Village Boulevard, Suite 200
Princeton, NJ 08540
(609) 951-2233


LEWIS, FEINBERG, LEE & JACKSON,
P.C.

By:  s/Daniel Feinberg

Daniel Feinberg (CA 135983)
476 9th Street
Oakland, CA 94607
(510) 839-6824
*Admitted Pro Hac Vice*


SIRI & GLIMSTAD LLP

By:  s/Aaron Siri

Aaron Siri (NY 4321790)
120 East 31st Street
New York, NY 10016
(212) 532-1091
*Admitted Pro Hac Vice*

*Attorneys for Plaintiff*