# EXHIBIT 3

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WEMA HOOVER,<br><br>                    Plaintiff,<br><br>v.<br><br>BRIJON MANAGEMENT &<br>EMPLOYEE LEASING SERVICES,<br>INC., *et al.*,<br><br>                    Defendants. | **CASE NO.: 3:14-cv-05786-MAS-DEA** |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR AN ORDER GRANTING
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
PRELIMINARILY CERTIFYING A CLASS FOR SETTLEMENT
PURPOSES, APPOINTING A CLASS REPRESENTATIVE AND CLASS
COUNSEL, APPROVING CLASS NOTICE PLAN, AND
<u>SCHEDULING A FAIRNESS HEARING</u>**

Named Plaintiff Wema Hoover ("Named Plaintiff"), by and through her

counsel and without any objection from Defendants, respectfully submits this

Unopposed Motion And Memorandum Of Law In Support Of Motion For An

Order Granting Preliminary Approval of Class Action Settlement, Preliminarily

Certifying A Class For Settlement Purposes, Appointing A Class Representative

and Class Counsel, Approving The Class Notice Plan, and Scheduling A Fairness

1

Hearing (the "Motion"), and moves this Court for an Order:

(1) preliminarily approving the proposed Class Action Settlement Agreement, which is attached hereto as Exhibit 1 (the "Settlement Agreement");[1]

(2) preliminarily certifying the Settlement Class, defined in the Settlement Agreement and below, solely for Settlement purposes;

(3) appointing Named Plaintiff as the Class Representative and her counsel as Class Counsel, solely for Settlement purposes;

(4) approving the Parties' proposed Class Notice Plan and proposed Claims Administrator; and

(5) scheduling a Fairness Hearing no sooner than 120 days from the filing of this Motion, or not before September 29, 2017.

## I.    INTRODUCTION

After conducting extensive discovery, and with the assistance of an experienced mediator, the Parties have agreed to a proposed Settlement of this complex ERISA Action.  The proposed Settlement, if finally approved by the Court, will resolve all individual and class action claims asserted in the Action Named Plaintiff's counsel believe the proposed Settlement is fair, reasonable, adequate and in the best interest of the Settlement Class and should be approved.

---

[1]    Capitalized terms used herein are defined herein and/or in the Settlement Agreement.

Named Plaintiff's counsel have vigorously prosecuted this Action on behalf of Named Plaintiff and the other Participants in the Employee Stock Ownership Plan ("ESOP") sponsored by Brijon Management & Employee Leasing Services, Inc. ("Brijon") for two years. The Parties agreed to the proposed Settlement only after arm's-length negotiations by experienced counsel that were facilitated by a well-respected mediator, as discussed below. Resolving the case now allows the Parties to avoid continued and costly litigation.

As set forth below, all of the prerequisites for preliminary approval of the Settlement and preliminary certification of the Settlement Class[2] are satisfied. As such, the Motion should be granted, a Fairness Hearing should be scheduled, and Class Notice should be provided to the Settlement Class in accordance with the Class Notice Plan. The proposed Class Notice Plan—which consists of an individual notice to be mailed via first-class U.S. Mail to Settlement Class Members at their last known addresses—satisfies the requirements of Rule 23 and due process.

---

[2]    The proposed Settlement Class consists of all Persons who were Participants of the ESOP at any time between September 18, 2008 and September 18, 2014, including Defendants, any officers or directors of Brijon, and any immediate family member of a Defendant or any officer or director of Brijon.

3

To facilitate the foregoing, Named Plaintiff requests that she and her counsel be appointed as the Class Representative and Class Counsel, respectively, and that the Garden City Group, Inc. be appointed as the Claims Administrator.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    <u>Description of the Action and Procedural History</u>

On September 17, 2014, Named Plaintiff, a former Brijon employee and a Participant in the ESOP, filed a class action complaint alleging various violations of ERISA against Defendants Philip A. Besler ("Besler"), Brijon, the ESOP, and the Administrative Committee for the ESOP.  The ESOP moved to dismiss the claims asserted against it on November 10, 2014 and that motion was later granted by the Court.  (ECF No. 23, 47-48).  On April 30, 2015, Named Plaintiff requested leave to file an amended complaint to add three additional Defendants—Besler & Co., Inc. ("BeslerCo"), CarolBri, LLC ("CarolBri"), and Michael Mullaugh—and additional claims under ERISA.  (ECF No. 40).  The motion for leave to file an amended complaint was granted, in part, on October 5, 2015.  (ECF No. 51).  On October 14, 2015, Named Plaintiff filed her Amended Class Action Complaint ("Complaint") alleging a number of ERISA violations against Defendants. Plaintiff's primary allegation, however, was that Defendants breached their fiduciary duties to the ESOP and its Participants by causing the ESOP to sell its

Brijon stock to CarolBri in August 2011 at a price which was less than fair market value for the stock. Defendants answered the Complaint and denied any liability or damages. (ECF No. 61, 64).

## B.    Discovery Efforts

The Parties exchanged substantial written discovery related to, among other things, (1) the business and operations of the corporate Defendants, and (2) the creation, administration, operation, and termination of the ESOP, including materials relating to the various valuations performed of the ESOP's assets. The depositions of Named Plaintiff and the individual Defendants were taken during discovery. Additionally, the Parties each retained valuation experts to offer an opinion the central issue in the case—whether CarolBri paid less than fair market value for the Brijon stock it bought from the ESOP. Named Plaintiff disclosed her expert witness and his report to Defendants on October 15, 2015. Defendants disclosed their expert witness and his report to Named Plaintiff on December 18, 2015.

## C.    Mediation

5

On May 18, 2016, at the direction of the Court, the Parties engaged in an all-day mediation with JAMS Mediator Jed D. Melnick, Esq., an individual with significant experience mediating complex ERISA actions. In anticipation of mediation, the Parties exchanged mediation briefs setting forth their positions regarding Named Plaintiff's likelihood of successfully prosecuting the claims at issue in the Action and the potential damages if Named Plaintiff could prove her claims.

The Parties and the Mediator all concluded that the central issue in the Action was whether or not CarolBri paid fair market value for the Brijon stock it bought from the ESOP in August 2011. If the answer was that CarolBri paid at least fair market value for the stock, then the ESOP and Participants suffered no harm and their claims would likely not result in any recovery regardless of whether an actual breach of fiduciary duty was proven. As a result of that conclusion, and with the assistance of the Mediator, the Parties agreed to a process which would allow an independent valuation expert agreeable to both sides to resolve this valuation/damages issue. That agreement was memorialized in a Settlement Memorandum of Understanding ("Settlement Memorandum"), a copy of which is attached as Exhibit 2.

6

As set forth in the Settlement Memorandum, the Parties agreed (1) this Action would be settled on a class action basis if so approved by the Court, and (2) valuation expert Michael Eggers would be appointed as a Special Master to determine the fair market value of the Brijon stock the ESOP sold to CarolBri in August 2011 (i.e., whether there were damages and, if so, the size of the damages). Named Plaintiff and Defendants agreed in the Settlement Memorandum that Defendants would pay a settlement amount to all class members equal to the fair market value of the Brijon stock (as determined by Mr. Eggers) minus the $468,000 CarolBri actually paid for the stock in August 2011. If Mr. Eggers determined that CarolBri paid at or above fair market value for the stock, then the Named Plaintiff and putative class members would not receive any additional payments from Defendants. (*See* Ex. 2 at p. 2). The Parties understood at the time they entered into the Settlement Memorandum that there was a chance that Mr. Eggers would determine that CarolBri paid at least fair market for the Brijon stock it bought from the ESOP and, as a result, the cash settlement amount could be "zero." (*See* Ex. 2 at p. 2).

In line with the Settlement Memorandum, the Parties requested that the Court appoint Mr. Eggers to serve as a Special Master. The Court agreed to do so

on November 18, 2016 when it entered the Stipulation and Order Appointing Special Master, a copy of which is attached hereto as Exhibit 3.

On February 3, 2017, Mr. Eggers issued his Special Master Report. Among other things, the Special Master determined that the amount CarolBri paid the ESOP for its Brijon stock in August 2011 "was at or exceeded the fair market value of the stock as of the date of the [stock] transaction." On February 17, 2017, pursuant to the terms of the Settlement Memorandum and the Order Appointing Special Master, the Special Master Report became a final and binding determination of the fair market value of the Brijon stock the ESOP sold to CarolBri in August 2011.

### D.   The Proposed Settlement

The proposed Settlement provides for a release of all Claims, including Unknown Claims, (1) arising under or relating to the ESOP that were asserted, or could have been asserted, in this Action by the Parties and Settlement Class Members; and (2) that Named Plaintiff, on the one hand, and any Defendant, on the other hand, may have against the other side.. The Settlement Class Members also have the benefit of an independent valuation opinion for the August 2011 ESOP transaction conducted by an individual who all Parties agreed was qualified.

There was no contemporaneous valuation opinion performed by a professional appraiser at the time of the transaction.

Named Plaintiff will not be receiving any consideration that the Settlement Class Members will not receive and Named Plaintiff's Counsel will not be seeking an award of attorneys' fees, expenses, or costs.

## LEGAL POINTS AND AUTHORITIES

## I.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Standard of Review

In this Circuit, the settlement of class actions and other complex litigation is strongly favored. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). When the parties can resolve the litigation through good faith and arms-length negotiations, judicial resources can be preserved and the public interest is furthered. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

The procedure for settling class action litigation is set forth in Fed. R. Civ. P. 23(e) and generally involves two stages: (1) preliminary approval and notice to class members of the proposed settlement; and (2) final approval following a "fairness hearing" in which the Court determines whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The standard for obtaining preliminary approval of a proposed class action settlement is "far less demanding" than the standard that must be met in order to obtain final approval. *Curiale v. Lenox Grp. Inc.*, No. 07-cv-1432, 2008 WL 4899474, at *9 n.4 (E.D. Pa. Nov. 14, 2008). In determining whether preliminary approval should be granted, the Court is required to determine whether the proposed settlement raises questions of fairness or reveals obvious deficiencies that need to be addressed, such as unduly preferential treatment of class representatives or segments of the class, before notice is distributed to class members and the Court conducts a final approval hearing. *See, e.g., Jones v. Commerce Bancorp, Inc.*, No. 05–5600, 2007 WL 2085357, at *2 (D.N.J. 2007); *Weissman v. Philip C. Gutworth, P.A.*, No. 2:14-cv-00666, 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015) ("The court's preliminary approval is not binding and is granted unless the proposed settlement is obviously deficient"); *see also Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). As explained below, the proposed settlement is fair, reasonable, adequate and is otherwise devoid of obvious deficiencies. As such, the Court should grant preliminary approval.[3]

---

[3]    The Third Circuit has identified nine factors that may help a district court's final decision to approve a settlement as fair, reasonable, and adequate. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d

**B.     The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel**

In making its preliminary evaluation of fairness, reasonableness and adequacy of settlement, the Court should consider whether the proposed settlement resulted from arm's-length negotiations between experienced counsel. *See id.* In this case, the process that led to the settlement was fairly conducted, with the aid of an experienced mediator, by highly-qualified plaintiffs' counsel who sought to obtain the best possible result for their client and the Settlement Class Members. (*See* Ex. 4, Feinberg Decl. at ____). When experienced counsel engage in an arm's-length negotiation that results in a settlement, that settlement is entitled to a presumption of fairness. *See, e.g., Weissman*, 2015 WL 333465, at *2; *Glaberson*, 2014 WL 7008539, at *4 (a settlement is presumed to be fair "when the

---

Cir. 1998) (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). Those factors are: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157. At the preliminary approval stage, the Court does need not address these factors as "the standard for preliminary approval is far less demanding." *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434,444 n. 7 (E.D. Pa. 2008). Nonetheless, consideration of these factors leads to the conclusion that the proposed Settlement is fair, reasonable, and adequate.

11

negotiations were at arm's-length, there was sufficient discovery, and the proponents of the settlement are experienced in similar litigation."); *Wal-Mart*, 396 F.3d at 116 (noting strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery).[4]

Here, Named Plaintiff's counsel have significant experience in similar ERISA class action cases, as shown by counsel's Declaration and biography. (*See, e.g.*, Ex. 4). Moreover, Named Plaintiff's counsel are well-informed as to the specifics of this Action, which they litigated for two years before a final settlement agreement was reached. During the course of this litigation, the Parties exchanged substantial written discovery related to, among other things, (1) the business and operations of the corporate Defendants; and (2) the creation, administration, operation, and termination of the ESOP, including materials relating to the valuation of the ESOP's assets. Before engaging in settlement discussions, Named Plaintiff's counsel also took the depositions of the individual Defendants and the

---

[4]    The use of a mediator in settlement negotiations further supports this presumption of fairness and the conclusion that the Settlement achieved here was free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

Parties exchanged expert witness discovery relating to the central issue of whether CarolBri paid at least fair market value for the Brijon stock it bought from the ESOP in August 2011. The substantial amount of discovery in this Action gave Named Plaintiff's counsel a significant understanding of the merits of the claims asserted, the strength of Defendants' defenses, the possible damages at issue, and the possible outcomes of continued litigation. Their approval of the Settlement also weighs in favor of the fairness of the Settlement. *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 572 (D.N.J. 2010) ("experienced class counsel's approval is entitled to considerable weight and favors finding that the settlement is fair").

For all these reasons, the Court has ample evidence to find that the Settlement was negotiated in good faith by experienced counsel who were well-informed of the merits, risks, and liabilities of the Action and who were aided by an experienced mediator. Named Plaintiff and the proposed Settlement Class Members are treated the same under the Settlement and there are no obvious deficiencies. Accordingly, the proposed Settlement is entitled to a presumption of fairness and should be preliminarily approved by the Court.

13

C. **The Settlement Is Fair And Reasonable Notwithstanding The Lack Of A Monetary Payment**

"[A] settlement can be fair without involving pecuniary relief." *McDonough v. Horizon Blue Cross Blue Shield of New Jersey*, 641 Fed. Appx. 146, 151 (3d Cir. 2015) (overruling objections to a settlement that required the class to relinquish $10 billion in damages claims in order to receive exclusively non-pecuniary relief); *see also Kirsch v. Delta Dental of N.J.*, 534 Fed. App'x 113 (3d Cir. 2013) (discussing relief associated in a settlement which included only nonmonetary, business reforms).

The critical issue in the case was whether the ESOP (and, in turn, the ESOP's Participants) received fair market value for the Brijon stock sold to CarolBri in 2011. The Parties—with the assistance of an experienced mediator—agreed to a settlement based on the findings of an independent valuation expert, Special Master Michael Eggers. That the Special Master ultimately determined that the ESOP received at least fair market value for the Brijon stock does not change the fact that the Settlement is the product of a reasonable process and produces a fair result for Named Plaintiff and the Settlement Class Members. Indeed, at its core, the Settlement achieves the goal of determining if the ESOP was damaged as a result of Defendants' alleged actions. The Settlement Class Members have the

benefit of an independent valuation opinion for the August 2011 ESOP transaction conducted by an individual who all Parties agreed was qualified. There was no contemporaneous valuation opinion for the transaction performed by a professional appraiser at the time of the transaction. As such, the lack of a monetary payment should not preclude this Court from preliminarily approving the Settlement.

## II.   PRELIMINARY   CERTIFICATION   OF   THE   PROPOSED SETTLEMENT CLASS IS APPROPRIATE

The propriety of certifying a class solely for purposes of settlement is well established in the Third Circuit. *See, e.g., In re Pet Food Prods. Liability Litig.*, No. 07-2867, 2008 WL 4937632, at *3 (D.N.J. Nov. 18, 2008) ("Class actions certified for the purposes of settlement are well recognized under Rule 23"). A court may grant certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (i.e., numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). As shown below, the following proposed Settlement Class satisfies the requirements of both Rule 23(a) and Rule 23(b)(1):

> All Persons who were Participants in the Brijon ESOP at any time between September 18, 2008 and September 18, 2014, not including Defendants, any officer or director of Brijon, and any immediate family member of a Defendant or any officer or director of Brijon.

### A.   The Settlement Class Satisfies Rule 23(a)'s Requirements

### 1.    *Numerosity*

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.    Although there is no minimum number to satisfy numerosity, the Third Circuit has observed that the numerosity requirement is generally met if the number of class members exceeds 40.    *See Stewart v. Abraham*, 275 F.3d 220, 227-228 (3d Cir. 2001) (finding a class of 67 members satisfied numerosity requirement).    Here, the ESOP's records reflect that there were over 100 Settlement Class Members who held Brijon stock in their ESOP accounts during the Class Period. As such, numerosity is satisfied.

### 2.    *Commonality*

The commonality requirement of Rule 23(a)(2) is satisfied if class members' claims "depend upon a common contention" that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).    The commonality "requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)).

"By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions. 'In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries.'" *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2012) (quoting *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142-43 (S.D.N.Y. 2010). Here, the Complaint alleges that Defendants breached their fiduciary duties to the ESOP and the Settlement Class under ERISA, the determination of which involves issues of law and fact that are common for all Settlement Class members. The common questions of law and fact in this Action include, among others: (1) whether Defendants were fiduciaries of the ESOP; (2) whether Defendants breached their fiduciary duties; (3) whether the ESOP and its Participants were injured by Defendants' alleged breaches of fiduciary duty; and (4) whether the Class is entitled to damages and, if so, the proper measure of damages. In particular, the central issue in this Action is whether the ESOP received at least fair market value for the shares of Brijon stock it sold to CarolBri. The answer to that question is the same for all Settlement Class Members. As such, the commonality requirement is satisfied in this Action.

### 3. Typicality

The typicality requirement of Rule 23(a)(3) is satisfied if the proposed class representative and the absent members of the class "point to the same broad course of alleged fraudulent conduct to support a claim for relief." *Zinberg v. Washington Bancorp., Inc.*, 138 F.R.D. 397, 401 (D.N.J. 1990) (internal quotation marks omitted); *see also Baby Neal v. Casey*, 43 F.3d 48, 57-78 (3d Cir. 1994). The presence of some factual differences between the proposed class representatives and other members of the class do not preclude a finding of typicality. *See Prudential*, 148 F.3d at 310 ("Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."); *In re Marsh ERISA Litig.*, 265 F.R.D. at 143 (Rule 23(a)(3) "is often met in putative class actions brought for breaches of fiduciary duty under ERISA").

In this Action, Named Plaintiff's claims are typical of those of the proposed Settlement Class because, among other things, Named Plaintiff was a Participant in the ESOP who had an ESOP account which held Brijon stock during the Class Period. In fact, "all of the claims are effectively the same unitary claim asserted on behalf of the same Plan." *Id.* Named Plaintiff also alleges that she and all Settlement Class members sustained the same form of economic loss arising out of

18

Defendants' alleged violations of ERISA (i.e., receipt of less than fair market value

for the Brijon stock). Since the interests of Named Plaintiff are aligned with the

proposed Settlement Class Members, typicality is satisfied. *In re Schering-*

*Plough/Merck Merger Litig.*, No. 09-CV-1099, 2010 WL 1257722, at *7 (D.N.J.

Mar. 26, 2010).

### 4.    *Adequacy*

Rule 23(a)(4) permits class certification only if "the representative parties

will fairly and adequately protect the interests of the class." Fed. R. Civ. P.

23(a)(4). Rule 23(a)(4) is satisfied if it appears that (a) the class representatives'

interests are not antagonistic to those of other members of the class that they seek

to represent; and (b) the class representative is represented by attorneys who are

qualified, experienced and generally able to conduct the litigation. *See Wetzel v.*

*Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).[5]

---

[5]    The adequacy of counsel is governed by Rule 23(g), and the adequacy of the
named plaintiff is governed by Rule 23(a)(4). *See* Fed. R. Civ. P. 23 Advisory
Committee's Notes. Rule 23(g) provides, in relevant part, "(1) Unless a statute
provides otherwise, a court that certifies a class must appoint class counsel. In
appointing class counsel, the court: (A) must consider: (i) the work counsel has
done in identifying or investigating potential claims in the action; (ii) counsel's
experience in handling class actions, other complex litigation, and the types of
claims asserted in the action; (iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class." The Court

19

The adequacy test is met here. With respect to Named Plaintiff, she has devoted substantial time and effort to this Action, including reviewing the pleadings, assisting in responding to written discovery, and preparing for and attending her deposition, and her interests are aligned with those of the Settlement Class in that all seek to prove Defendants' liability and damages. *In re Marsh ERISA Litig.*, 265 F.R.D. at 143 (citation omitted); Feinberg Decl. at ___. Moreover, there are no known conflicts between Named Plaintiff and the Settlement Class Members. For these reasons, Named Plaintiff respectfully suggests that the adequacy requirement has been met and requests that she be appointed as the Class Representative for settlement purposes.

With respect to the adequacy of counsel, Named Plaintiff's counsel are qualified, experienced attorneys with broad-based, multijurisdictional experience in complex class action litigation, including extensive experience in the context of analogous ERISA claims based on the alleged undervaluation of privately-held stock. (*See* Feinberg Decl. at ___). In addition to being experienced ERISA class action attorneys, the course of this litigation has amply demonstrated Named

---

may also, among other things, "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiff's counsel's knowledge of the applicable law and willingness to devote the resources necessary to protect the interests of the putative class. As discussed herein, Named Plaintiff's counsel has vigorously litigated this action. For these reasons, Named Plaintiff's counsel should be deemed adequate for purposes of Rule 23 and should be appointed as Class Counsel in this Action for settlement purposes.

## B.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(1)

In addition to demonstrating the requirements of Rule 23(a) are met, Named Plaintiff must also establish that at least one subsection of Rule 23(b) is satisfied. Here, certification is proper under Rule 23(b)(1), which states that a class may be certified if:

> (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Under Rule 23(b)(1)(A), the possible prejudice to the defendants and/or to the putative class members is the main consideration. *See, e.g., In re Ikon Office Sols.,*

21

*Inc. Sec. Litig.,* 191 F.R.D. 457, 466 (E.D. Pa. 2000) ("[t]here is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether [the company] had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions."). If this case is not certified as a class action, the potential for inconsistent judgments would arise. For example, certain of the Defendants could be held to be fiduciaries and/or to have breached fiduciary duties in one case and not in another. Therefore, Rule 23(b)(1)(A) is satisfied.

Given that the Complaint alleges breaches of fiduciary duties under ERISA, class certification under Rule 23(b)(1)(B) is also appropriate because actions for breaches of fiduciary duty under ERISA are derivative in nature. Thus, the outcome for one Participant could be dispositive as to other Participants. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 143-44 (collecting cases). For this reason, the Third Circuit has held that "[i]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (collecting cases).

22

As shown above, the proposed Settlement Class satisfies Rule 23(a) and Rule 23(b)(1).  As such, Named Plaintiff requests that the proposed Settlement Class be preliminarily certified for purposes of settlement.

## III.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED, THE PROPOSED CLAIM ADMINISTRATOR SHOULD BE APPOINTED, AND A FAIRNESS HEARING SHOULD BE SET

In addition to preliminarily approving the proposed Settlement Agreement and preliminarily certifying the proposed Settlement Class, the Court must approve the proposed means of notifying Settlement Class Members of the proposed Settlement and set a time and date for a Fairness Hearing.

In order to satisfy due process considerations, the notice requirement of Rule 23(e) requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re American Bus. Fin. Servs., Inc. Noteholders Litig.*, No. 05232, 2008 U.S. Dist. LEXIS 95437, at *29 (E.D. Pa. Nov. 21, 2008) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Lenahan v. Sears, Roebuck and Co.*, No. 02-0045, 2006 WL 2085282, at *6 (D.N.J. July 24, 2006); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) ("Generally speaking," notice is sufficient if it

"enable[s] class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement").

The proposed Class Notice Plan is designed to reach the largest number of Settlement Class Members possible. The Notice, which is attached hereto as Exhibit 5, will be sent by first-class U.S. mail to the last known address of each Settlement Class Member at least two months prior to the Fairness Hearing. Notably, all Settlement Class members had ESOP accounts, so the ESOP has last known addresses for them, at least as of the Class Period, and has their Social Security numbers, which can be used to do an address update if Notices are returned as undeliverable.

The Class Notice Plan agreed to by the Parties satisfies all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e). It describes in plain English: (i) the Settlement's terms and operations; (ii) the nature and extent of the released claims; (iii) the procedure and timing for objecting to the Settlement; and (iv) the date and place for the Fairness Hearing. As such, it should be approved by the Court.

To facilitate the Class Notice Plan, Named Plaintiff requests that the Court schedule a Fairness Hearing to take place no sooner than 120 days from the filing of this Motion. Named Plaintiff further requests that the Garden City Group, Inc.

24

("GCG") be appointed to serve as the Claims Administrator for purposes of effectuating the Class Notice Plan.

## CONCLUSION

For the foregoing reasons, Named Plaintiff respectfully requests that the Court grant the Motion and enter the proposed Preliminary Approval Order attached hereto as Exhibit 6.